KEWEENAW BAY INDIAN
COMMUNITY,
Plaintiff,

v.

UNITED STATES of America, U.S. Department of the Interior, and U.S. Department of Justice, Defendants.

No. 2:94–CV–262.

United States District Court,
W.D. Michigan,
Northern Division.

Feb. 5, 1996.

Joseph P. O'Leary, Keweenaw Bay Indian Community Tribal Center, Baraga, MI, Konrad D. Kohl, Kohn, Harris & Peters, PC, Metamora, MI, for plaintiff.

Edward J. Passarelli, U.S. Department of Justice, Environment & Natural Resources, Division–General Litigation Sec., Washington, D.C., for defendants.

## OPINION

McKEAGUE, District Judge.

This case presents the questions of whether the tribal-state compact between Keweenaw Bay Indian Community and the State of Michigan permits class III gaming on a particular tract of land in Marquette County, Michigan, and whether § 2719 of the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, applies to class III gaming on Indian lands when a tribal-state compact authorizing such gaming exists. Presently before the Court are plaintiff's motion for summary judgment and declaratory and injunctive relief, and defendants' motion for summary judgment and motion to take judicial notice.

### I. INDIAN GAMING REGULATORY ACT

The Indian Gaming Regulatory Act ("IGRA") was enacted by Congress in Octo-

ber of 1988 and provides a comprehensive scheme for regulating gaming activities on Indian lands. 25 U.S.C. §§ 2701–2721. According to the legislative history, the purposes of IGRA are to (1) provide a system for joint regulation by tribes and the federal government of class II gaming on Indian lands, and (2) a system of compacts between tribes and states for regulation of class III gaming. S.Rep. No. 100–446, 100th Cong., 2d Sess., reprinted in 1988 U.S.Code Cong. & Admin.News 3071 [hereinafter "U.S.C.C.A.N."]. IGRA divides gaming into three classes, each subject to differing degrees of tribal, state and federal jurisdiction and regulation.

Class I gaming includes social games for nominal prizes or traditional forms of "Indian gaming engaged in by individuals as a part of, or in connection with, tribal ceremonies or celebrations." 25 U.S.C. § 2703(6). When conducted on Indian lands, class I gaming is within the exclusive jurisdiction of the Indian tribe. *Id.* § 2710(a)(1). Class I gaming "shall not be subject to the provisions of this Act [IGRA]." *Id.*

Class II gaming includes bingo and related games such as pull tabs, lotto, punch boards and card games such as poker in which the players play against one another rather than against the house. 25 U.S.C. § 2703(7)(A), (B). Class II gaming does not include black jack or any electronic games of chance, slot machines, or any "banking" card games, in which players play against the house and the house acts as a banker. 25 U.S.C. § 2703(7)(B). Tribes may engage in class II gaming if "such Indian gaming is located within a state that permits such gaming for any purpose by any person, organization or entity . . ., and the governing board of the Indian tribe adopts an ordinance or resolu-

tion which is approved by the Chairman" of the National Indian Gaming Commission. *Id.* § 2710(b)(1)(A), (B). Such gaming is within the jurisdiction of Indian tribes, but regulated by the provisions of IGRA. *Id.* § 2710(a)(2).

Class III gaming encompasses all forms of gaming which are not included in either class I or class II. In order for class III gaming to be lawful on Indian lands, the gaming must be "authorized by an ordinance or resolution that—(i) is adopted by the governing body of the Indian tribe having jurisdiction over such lands, (ii) meets the requirements of subsection (b) of this section, and (iii) is approved by the Chairman."[1] 25 U.S.C. § 2710(d)(1)(A)(i)–(iii). In addition, the activities must be "located in a State that permits such gaming for any purpose by any person, organization, or entity, and . . . conducted in conformance with a Tribal–State compact entered into by the Indian tribe and the State. . . ." 25 U.S.C. § 2710(d)(1)(B)–(C). Class III gaming is "fully subject to the terms and conditions of the Tribal–State Compact."[2] 25 U.S.C. § 2710(d). Neither party disputes the fact that class III gaming is the only type of gaming at issue in this litigation.

## II. FACTUAL BACKGROUND

On October 14, 1988, the Keweenaw Bay Indian Community (the "Tribe") obtained title to the parcel of land in Marquette County, Michigan, on which it is conducting the class III gaming at issue in the present case. This land was placed into trust by the Department of the Interior for the benefit of the Tribe on September 24, 1990.[3] Under the Constitution of the Tribe, this land became part of the reservation on that same date.

---

**1.** "Chairman" means the Chairman of the National Indian Gaming Commission. 25 U.S.C. § 2703(2).

**2.** IGRA provides that any tribe having jurisdiction over lands upon which they wish to conduct class III gaming shall request the state in which the lands are located to negotiate for the purpose of entering into a compact governing such gaming. 25 U.S.C. § 2710(d)(3)(A). Upon such request, the state shall negotiate with the Tribe in good faith. *Id.* In the event that the state re-

fuses to enter into negotiations, the Tribe may bring an action to compel the state to negotiate. 25 U.S.C. § 2710(d)(7)(A)(i). The Tribe cannot bring such an action until 180 days after the Tribe requests the state to enter negotiations. 25 U.S.C. § 2710(d)(7)(B)(i).

**3.** This date was determined in prior litigation. The applicable date of the trust status of this parcel of land is an issue presently pending at the Sixth Circuit.

The Tribe previously operated a class II bingo facility in Marquette, Michigan, under the name "Big Bucks Bingo II" on this same parcel of land. An action for declaratory relief and an injunction to close down that class II facility was filed by a United States Attorney. On September 27, 1993, the United States District Court for the Western District of Michigan granted the United States of America declaratory relief, holding that the class II gaming conducted by the Tribe violated 25 U.S.C. § 2719(a). *United States of America v. Keweenaw Bay Indian Community,* No. 92–CV–265, 1993 U.S.Dist. LEXIS 15664 (W.D.Mich. Sept. 27, 1993). After the Court's ruling, the Tribe ceased operating class II gaming on this parcel of land, and appealed.[4]

On August 20, 1993, the Tribe and the State of Michigan entered into a tribal state compact authorizing class III gaming on the Tribe's "Indian lands" within the State of Michigan.[5] The compact defines "Indian lands" as:

(1) all lands currently within the limits of the Tribe's Reservation;

(2) any lands contiguous to the boundaries of the Reservation of the Indian Tribe on October 7, 1988; and

(3) any lands, title to which is either held in trust by the United States for the benefit of the Tribe or individual, or held by the Tribe or individual subject to restriction by the United States against alienation and over which the Tribe exercised governmental power.

Compact between the Keweenaw Bay Indian Community and the State of Michigan, sec. 2(B) (hereinafter "Compact").

The Tribe then submitted a tribal gaming ordinance to the National Indian Gaming Commission, as required by IGRA. See 25 U.S.C. § 2710(d)(2)(A). The Chairman of the National Indian Gaming Commission approved the ordinance, and the approval was published in the Federal Register on March 3, 1994. Fed.Register, Vol. 59, No. 42, March 3, 1994, pp. 10185–10186.

Prior to opening the class III gaming facility,[6] the Tribe sought approval from the Bureau of Indian Affairs. The Bureau of Indian Affairs responded that the land was subject to the requirements of 25 U.S.C. § 2719 which prohibits gaming unless the Tribe meets one of the exceptions provided within. The Tribe opened the class III facility on September 28, 1994, and commenced this lawsuit. At this facility, the Tribe operates six blackjack tables, one craps table, and electronic and/or video games of chance at the casino, including, but not limited to, approximately 100 video poker games and slot machines.

The Tribe claims that a valid tribal-state compact exists which allows class III gaming on the land in question and seeks declaratory and injunctive relief against defendants the United States of America, the United States Department of the Interior, and the United States Department of Justice (collectively "federal defendants"). Specifically, the Tribe seeks a declaratory judgment that the class III gaming activities are lawful and to enjoin the federal defendants from taking action to prohibit the gaming.[7]

The federal defendants claim that IGRA prohibits all gaming on land taken into trust after October 17, 1988, unless an exception contained within is satisfied. The federal defendants claim that the Tribe is conducting class III gaming contrary to the express prohibition of IGRA. The federal defendants further claim entitlement to an injunction prohibiting and abating the gaming.

---

4. The United States Court of Appeals for the Sixth Circuit is holding this appeal in abeyance pending final resolution of the Tribe's application under 25 U.S.C. § 2719.

5. According to IGRA, "Indian lands" means "all lands within the limits of any Indian Reservation; and any lands, title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual, subject to restriction by the United States against alienation and over which

an Indian tribe exercises governmental power." 25 U.S.C. § 2703(4)(A)–(B).

6. This class III gaming operation is located in the same facility that closed after the prior litigation concerning class II gaming.

7. Initially, the Tribe also claimed denial of equal protection and selective prosecution, but the Tribe later agreed to dismiss these claims.

Both parties have filed motions for summary judgment,[8] and a hearing was conducted on September 5, 1995. The Court has reviewed the parties' respective briefs and considered the arguments offered at the hearing. The Court now considers this matter ripe for determination.

### III. SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–248, 106 S.Ct. at 2510 (emphasis in original).

■ The substantive law determines which facts are material. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* An issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Neither party contends that a genuine issue of material fact exists; thus, summary judgment is appropriate.

### IV. THE TRIBAL–STATE COMPACT

■ The Keweenaw Bay Indian Community has jurisdiction over the tract of land on which the class III gaming is conducted, and the governing body, the Keweenaw Bay Tribal Council, approved a gaming ordinance. There has been no dispute concerning whether the Keweenaw Bay Community's ordinance meets the requirements of 25 U.S.C. § 2710(b). The ordinance was approved by the Chairman of the National Indian Gaming Commission, and the approval was published in the Federal Register on March 3, 1994. Fed.Register, Vol. 59, No. 42, March 3, 1994, pp. 10185–10186. Likewise, the federal defendants do not contest the fact that Michigan is a state which permits gaming by at least some persons, organizations or entities.

By its own terms, the tribal state compact became effective upon the fulfillment of four conditions. Compact, sec. 11(A)–(D). The compact first required endorsement by the tribal chairperson after approval by the tribal council. Tribal Council President Frederick Dakota signed the compact on August 20, 1993. The second requirement was that the governor of the state endorse the compact and seek concurrence in that endorsement by resolution of the Michigan Legislature. Governor John Engler signed this compact on August 20, 1993, and on September 28, 1993, the compact was given the final legislative approval by the Michigan Senate. The final requirements were approval by the Secretary of the Interior of the United States and publication in the Federal Register. On November 30, 1993, the compact was approved by the Secretary of the Interior and published in the Federal Register. Fed.Register, Vol. 58, No. 228, November 30, 1988, p. 63262.

In the "Purpose and Objective" section, the compact lists as a purpose "of the Tribe

---

**8.** Defendants have also filed a request for judicial notice. This pleading requests the Court to take judicial notice of the position of Michigan Governor John Engler with respect to off-reservation gaming. The Court declines to do so as it does not consider this information relevant to deter-

mination of whether there exists a valid tribal-state compact authorizing class III gaming on the land in question or whether IGRA expressly prohibits the gaming at issue in this litigation. Accordingly, defendants' motion for the Court to take judicial notice is denied.

in making this Compact, ... [t]o compact for Class III gaming on Indian lands in Michigan as authorized by IGRA." Compact, sec. 1(C). Section 4 of the compact sets forth the provisions for regulating class III gaming. The compact provides that the Tribe may lawfully conduct a variety of class III games on Indian lands.[9] Compact, sec. 3(A). According to the compact, Indian lands include "[a]ny lands title to which is ... held in trust by the United States for the benefit of the Tribe...." Compact, sec. 2(B)(3). The land on which the Tribe is conducting class III gaming was placed into trust for the benefit of the Tribe by the Department of the Interior on September 24, 1990, nearly three years before this compact was signed.

Pursuant to the terms of the compact, "Indian lands" also means "all lands currently within the limits of the Tribe's Reservation." Compact, sec. 2(B)(1). The Tribe obtained title to the land on October 14, 1988, and pursuant to the Tribe's Constitution, the land became part of the Tribe's Reservation on September 24, 1990, the date the land was held in trust for the benefit of the Tribe. See Keweenaw Bay Indian Community Constitution, Art. I.[10] This parcel of land fits within the definition of "Indian lands" as described in §§ 2(B)(1) and (3) of the compact. The compact itself provides that class III gaming on the Tribe's Indian lands is lawful,[11] (Compact, sec. 3(A)), but only so long as the compact is in effect. Compact, sec. 12(D). Thus, the compact permits the class III gaming at issue.

The federal defendants contend that plaintiff's class III gaming activity violates section 2(C) of the compact which requires the Tribe to submit to the requirements of 25 U.S.C. § 2719. Section 2(C) of the compact provides: "Notwithstanding subsection 2(B)

above, any lands which the Tribe proposes to be taken into trust by the United States for purposes of locating a gaming establishment thereon shall be subject to the Governor's concurrence power, pursuant to 25 U.S.C. § 2719 or any successor provision of the law." The federal defendants' argument neglects the fact that, at the time this compact was signed and approved, the parcel of land on which the class III gaming is conducted was already held in trust for the Tribe. As a result, this parcel of land cannot be "land which the Tribe proposes to be taken into trust." Compact, sec. 2(C) (emphasis supplied). Thus, the Court finds section 2(C) of the compact inapplicable to the parcel of land on which the Tribe is presently conducting class III gaming.

Accordingly, the Court finds that the tribal-state compact between the Keweenaw Bay Indian Community and the State of Michigan authorizes the class III gaming at issue in the present litigation.

## V. APPLICABILITY OF 25 U.S.C. § 2719

The federal defendants contend that the tribal-state compact does not change the fact that 25 U.S.C. § 2719 prohibits the Tribe from engaging in the class III gaming involved in this case because the land was acquired by the Secretary of the Interior in trust for the Tribe after October 17, 1988. Section 2719 provides:

Except as provided in subsection (b) of this section, gaming regulated by this Chapter shall not be conducted on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988, unless—(1) such lands are located within or contiguous to the boundaries of the reservation of the Indian tribe on October

---

**9.** Among the class III games listed are: craps and related dice games; wheel games including "Big Wheel" and related games; roulette; banking card games; electronic games of chance; and keno. Compact, sec. 3(A)(1)–(6).

**10.** Article I of the Keweenaw Bay Indian Community's Constitution provides:

The territorial jurisdiction of this Constitution shall embrace the land within the original boundary lines of the L'Anse Reservation as defined pursuant to treaty dated September 30,

1854, (10 Stat. 1109), and any and all future additions of land acquired within or without said boundary line by the Secretary of the Interior or by the tribe, except as otherwise provided by law.

**11.** The Compact places certain restrictions on class III gaming activities, but there is no allegation that the Tribe is violating any provision of the Compact other than § 2(C), an allegation the Court finds to be without merit.

17, 1988; or (2) the Indian tribe has no reservation on October 17, 1988 ...

25 U.S.C. § 2719(a).

The federal defendants contend that the Tribe is conducting gaming on land acquired in trust after the relevant date, that the Tribe had a reservation as of that date, and that the land on which the class III gaming facility is located was not contiguous to the Tribe's reservation boundaries on October 17, 1988. In addition, defendants claim that the Tribe has not obtained the approval from the Secretary and concurrence from Governor Engler that are required to satisfy the exception provided in 25 U.S.C. § 2719(b). Section 2719(b) provides:

> (1) Subsection (a) of this section will not apply when—(A) The Secretary, after consultation with the Indian tribe and appropriate state and local officials ... determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination.

25 U.S.C. § 2719(b)(1).

■ The Tribe does not contest the defendants' assertions concerning the parcel of land on which the class III gaming is conducted, nor does it contend that the Tribe's activities fit into one of the exceptions to the provision. Instead, the Tribe contends that a tribal state compact exists, and that the compact is the appropriate vehicle for regulating class III gaming, not 25 U.S.C. § 2719. In short, the Tribe argues that 25 U.S.C. § 2719 is inapplicable to the class III gaming at issue in this litigation. The Court agrees.

Section 2719 prohibits gaming activities on land taken into trust after October 17, 1988. 25 U.S.C. § 2719 begins: "Except as provided in [the exceptions listed in subsection (b) ] ..., gaming regulated by this chapter shall not be conducted on lands acquired by the Secretary in trust for the benefit of an Indi-

an tribe after October 17, 1988...." 25 U.S.C. § 2719(a). The Tribe contends that class III gaming is not "gaming regulated by this chapter." In determining whether class III gaming is regulated by IGRA, the Court will view the statute as a whole. See *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1349 (6th Cir.1994).

25 U.S.C. § 2710(d) addresses the regulation of class III gaming on Indian land. This section provides that class III gaming is lawful if certain conditions are met. As discussed in part IV, the Tribe met these conditions. Once the conditions are satisfied, regulation of class III gaming is "fully subject to the terms and conditions of the Tribal–State Compact." 25 U.S.C. § 2710(d)(2)(C). Thus, the Court concludes that § 2719 is inapplicable in the instant case because the class III gaming is regulated by the Compact between the Keweenaw Bay Indian Community and the State of Michigan rather than by IGRA.[12]

The Court's conclusion is also supported by the legislative history. One of the dual purposes of IGRA is to set forth a "system of compacts between tribes and states for regulation of class III gaming." 1988 U.S.C.C.A.N. at 3071. IGRA "does not contemplate and does not provide for the conduct of class III gaming activities on Indian lands in the absence of a tribal-state compact." 1988 U.S.C.C.A.N. at 3076.

In addition, to adopt the federal defendants' position would result in a non-sensical reading of the statute. Under § 2719, in order for gaming activities to be lawfully conducted on Indian lands, the Secretary of the Interior must approve of the proposed gaming and the state governor must concur in that approval. The Secretary must make a determination that the gaming activity "would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community." 25 U.S.C. § 2719(b)(1)(A). In this scheme, the federal government has discretion in the "best interest" determination, and the state has no voice in the decision until after the

---

12. At least one other court has noted that "the tribal-state compact is the exclusive method of regulating class III gaming" *State of Rhode Is-* *land v. Narragansett Indian Tribe,* 19 F.3d 685 (1st Cir.1994).

Secretary has made a favorable determination.

Yet, the IGRA provisions that specifically pertain to class III gaming permit the federal government much less discretion and allow the state a more significant role. IGRA requires the Chairman to approve of any ordinance or resolution pertaining to class III gaming provided that certain conditions are met. 25 U.S.C. § 2710(d)(2)(B). If these conditions are satisfied, the Chairman may not withhold approval. Upon the Chairman's approval and publication of that approval in the Federal Register, the Tribe has a statutory right to bring a cause of action [13] against a state the refuses to negotiate a tribal-state compact [14] in good faith.[15] 25 U.S.C. § 2710(d)(7)(A). Section 2719 affords the Tribe no such protection.

In addition, the Tribe has already received approval from both the Secretary of the Interior and Governor Engler. Governor Engler signed the Tribal–State Compact permitting class III gaming on the Tribe's Indian lands on August 20, 1993. As discussed in part IV of the Court's opinion, this compact clearly applies to the land on which the controversial class III gaming is conducted. The Secretary's approval was published in the Federal Register on November 30, 1993. Fed.Register, Vol. 58, No. 228, November 30, 1988, p. 63262. Surely, Congress did not intend that the Tribe should submit to the approval process a second time, merely to get the Secretary's and Governor's approval in reverse order.

Accordingly, the Court finds § 2719 inapplicable to the class III gaming presently at issue.

## VI. RELIEF

■ The Tribe seeks declaratory and injunctive relief. The Declaratory Judgment Act states in pertinent part: "[i]n a case of actual controversy within its jurisdiction ...

any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. A declaratory judgment is appropriate where it will clarify and settle the legal relations at issue and provide relief from the uncertainty caused by the controversy which gave rise to the proceeding. *Allstate Ins. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990). The Declaratory Judgement Act "is an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Id.* (quoting *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (internal quotation and citation omitted)).

■ In the Sixth Circuit, five factors are generally considered:

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citing E. Borchard, Declaratory Judgments 326 (2d ed.1941)); *Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1063 (6th Cir.1987); *Grand Trunk W. R.R. v. Consolidated Rail Corp.,* 746 F.2d 323, 325–26 (6th Cir.1984).

■ In this case, the Tribe seeks a declaratory judgment that the class III gaming activities are lawful, and all of the relevant factors weigh in favor of granting the Tribe the declaratory judgment requested. Declaratory relief would settle the present controversy. Similarly, the declaratory relief

---

13. Tribal-state compacts are required only for class III gaming. 25 U.S.C. § 2710(b). See also *United States v. Sisseton–Wahpeton Sioux Tribe,* 897 F.2d 358 (8th Cir.1990).

14. An Indian tribe must wait until after the "180–day period beginning on the date on which

the Indian Tribe requested the State to enter into negotiations" has lapsed before filing suit. 25 U.S.C. § 2710(d)(7)(B)(i).

15. Assuming a state does negotiate and a tribal-state compact is formed, the compact is then forwarded to the Secretary of the Interior for approval. 25 U.S.C. § 2710(d)(3)(B).

will help clarify the legal positions of the parties. There is no indication that the Tribe has sought a declaratory relief for the purpose of "procedural fencing," and a declaratory judgment in this action is not likely to encroach upon state court jurisdiction. The Court finds that the issues raised in this case would be served most effectively by a declaratory judgment, and a declaratory judgment will issue.

The Tribe also seeks injunctive relief. Specifically, the Tribe asks the Court to issue an order enjoining the federal defendants from taking further action to prohibit the gaming. A prohibitory injunction is a form of equitable relief which requires a showing of irreparable harm and inadequacy of legal remedies. See *Amoco Production Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). The Tribe has made neither showing. Accordingly, no injunctive relief will issue.

An order consistent with this opinion shall issue forthwith.

### JUDGMENT ORDER

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment (docket # 17) is **GRANTED, and DECLARATORY JUDGMENT** is entered for the plaintiff.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (docket # 18) is **DENIED.**

**IT IS FURTHER ORDERED** that the defendants' motion for the Court to take judicial notice (docket # 29) is DENIED.