**KEWEENAW BAY INDIAN COMMUNITY, Plaintiff,**

v.

**UNITED STATES of America, U.S. Department of the Interior, and U.S. Department of Justice, Defendants.**

No. 2:94–CV–262.

United States District Court, W.D. Michigan, Southern Division.

Aug. 27, 1996.

Joseph P. O'Leary, Baraga, MI, Konrad D. Kohl, Kohl, Harris & Peters, P.C., Metamora, MI, for plaintiff.

Edward J. Passarelli, U.S. Dept. of Justice, Washington, DC, for U.S. defendants.

Keith D. Roberts, Assistant Attorney General, Lottery & Racing Division, Lansing, MI, for State intervenor.

## OPINION

McKEAGUE, District Judge.

On February 5, 1996, the Court entered an opinion and order awarding summary judgment and declaratory judgment to the plaintiff. 914 F.Supp. 1496. In essence, the Court's opinion concluded that the class III gaming conducted by the Keweenaw Bay Indian Community (the "Tribe") was authorized by the Tribal–State Compact between the Tribe and the State of Michigan, and therefore lawful. Defendants United States of America, U.S. Department of Interior and U.S. Department of Justice (collectively the "federal defendants") have filed a motion for reconsideration or, in the alternative, to alter or amend the judgment pursuant to Fed. R.Civ.P. 59(e). The State of Michigan, an intervening defendant,[1] has also filed a motion to alter or amend.

### I. RULE 59(e) MOTIONS

Motions to alter or amend are entrusted to the Court's sound discretion. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir.1982). In general, a judg-

---

1. The Court granted the State's motion for intervention on February 28, 1996.

ment may be altered or amended for one of three reasons: (1) because of an intervening change in the controlling law;[2] (2) because evidence not previously available has become available; or (3) necessity to correct a clear error of law or prevent manifest injustice. *Javetz v. Bd. of Control, Grand Valley State University,* 903 F.Supp. 1181, 1190 (W.D.Mich.1995).

A Rule 59(e) motion, however, is not intended as a vehicle to relitigate previously considered issues. *Keweenaw Bay Indian Community v. State of Michigan,* 152 F.R.D. 562, 563 (W.D.Mich.1992), *aff'd* 11 F.3d 1341 (6th Cir.1993) (citing *E.E.O.C. v. Argent Ind.,* 746 F.Supp. 705, 706 (S.D.Ohio 1989)). In addition, a Rule 59(e) motion should not be utilized to submit evidence which could have been previously submitted in the exercise of reasonable diligence. *Id.* (citing *Weyerhaeuser Corp. v. Koppers Co.,* 771 F.Supp. 1406, 1419 (D.Md.1991)). Where a moving party attempts to obtain a reversal of a judgment by offering the same arguments previously presented, the "proper vehicle for relief is an appeal" rather than a motion to alter or amend. *Id.* (citing *Dana Corp. v. United States,* 764 F.Supp. 482, 489 (N.D.Ohio 1991)).

## II. FEDERAL DEFENDANTS' MOTION

The federal defendants' motion requests the Court to reconsider its order and opinion granting plaintiff's motion for summary judgment and granting plaintiff declaratory relief. The arguments raised by the federal defendants in support of their motion are essentially the same arguments which were presented in support of the federal defendants' cross motion for summary judgment. The federal defendants' motion is not based on a

change in controlling law and the federal defendants do not assert that any of the operative facts have changed since the issues were submitted to the Court.

The federal defendants nevertheless contend that this motion is proper because the opinion and order should be reconsidered to correct a clear error of law. The federal defendants contend that: (1) the Court erroneously relied on the codified version of § 20 of the Indian Gaming Regulatory Act ("IGRA") rather than the enacted version of the Public Law; (2) resort to legislative history was unnecessary and the legislative history supports the federal defendants' position in any event; (3) the class III gaming conducted by the Tribe is regulated by federal regulatory agencies; and (4) the State of Michigan is an indispensable party to this litigation.

### A. Reliance on the Codified Version of § 20 of IGRA

The federal defendants' contend that the Court erred in utilizing the codified version of § 20 of the Indian Gaming Regulatory Act,[3] which contains the phrase "gaming regulated by this chapter," rather than "gaming regulated by the Act." Although the federal defendants are correct that the codified and enacted versions of the IGRA contain different wording, this has no effect upon the Court's decision. IGRA, codified as 25 U.S.C. § 2701 *et seq.,* is Chapter 29 of Title 25 of the United States Code; although the Act contains many sections and subsections, it is comprised of only one chapter. As such, in the Court's opinion of February 5, 1996, "chapter" was understood to mean the whole of the Indian Gaming Regulatory Act.[4]

---

**2.** Neither the parties nor the intervenor have raised the issue of whether the Supreme Court's decision in *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) has any impact on the Court's decision. The Court notes that it mentioned the Tribe's statutory right under 25 U.S.C. § 2710(d)(7) to bring a cause of action against a state that refuses to negotiate a Tribal–State Compact in good faith at pp. 1502–03 of the opinion issued on February 5, 1996. While the Supreme Court held in *Seminole Tribe* that Congress lacked the power under the Indian Commerce Clause to abrogate a state's sovereign immunity and struck

down 25 U.S.C. § 2710(d)(7), this holding does not impact upon this Court's conclusion that § 2719 is inapplicable to the present case.

**3.** Section 20 of the Indian Gaming Regulatory Act is codified as 25 U.S.C. § 2719.

**4.** The language of the Court's opinion clearly reflects the Court's understanding that "Chapter" meant the Indian Gaming Regulatory Act. See 914 F.Supp. at 1502 ("The Tribe contends that [the] class III gaming [at issue in this litigation] is not 'gaming regulated by this chapter.'

The federal defendants then attempt to utilize the irrelevant semantical distinction between "Act" and "chapter" to recapitulate their argument that 25 U.S.C. § 2719 is applicable to the class III gaming at issue in this litigation. The federal defendants misconstrue this Court's opinion as stating that IGRA does not regulate any class III gaming. At no time did this Court determine that class III gaming is never regulated by IGRA. Certainly, class III gaming is regulated by IGRA because class III gaming is prohibited by IGRA in the absence of a Tribal–State Compact. Once a Tribal–State Compact that meets all the requirements provided in IGRA [5] is created, however, class III gaming conducted on the land subject to the Compact is properly regulated by that Compact. The class III gaming at issue is conducted on land subject to a valid Compact between the Tribe and the State of Michigan. Thus, the Court correctly determined that the gaming at issue in this litigation is regulated by the Compact, and the federal defendants' contention that the Court erroneously relied on the codified language rather than the enacted language provides no basis to alter or amend the judgment.

## B. Whether Resort to Legislative History was Unnecessary

■ The federal defendants next contend that resort to legislative history was unnecessary because the language of the statute is plain and unambiguous. The federal defendants rely on Supreme Court precedent holding that when the language of a statute is plain and unambiguous, "the sole function of the courts is to enforce it according to its terms." [6] *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct.

192, 194, 61 L.Ed. 442 (1917)); *accord Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are unambiguous, then this first canon is also the last: 'judicial inquiry is complete.' ").

In this case, the Court's ruling was based upon the plain and unambiguous language of the IGRA. As the Court's opinion noted, 25 U.S.C. § 2710(d) addresses the regulation of class III gaming on Indian lands, and provides that class III gaming is lawful if certain conditions are met. The Court concluded that all of the conditions were satisfied and that the class III gaming at issue in this case was "fully subject to the terms and conditions of the Tribal–State Compact" as provided in 25 U.S.C. § 2710(d)(2)(C). Because the Compact clearly provided for the class III gaming at issue, the Court found that the gaming was lawful and that the gaming was no longer regulated by the IGRA within the meaning employed by § 2719. The Court did not rely on legislative history to reach this conclusion. Instead, the Court relied on the plain language of the statute to reach its conclusion and merely noted that the Court's interpretation was also supported by the legislative history.[7] See 914 F.Supp. at 1502–03. Accordingly, the federal defendants' contention that resort to legislative history was unnecessary provides no basis to alter or amend the judgment.

## C. Regulatory Agencies' Oversight of Class III Gaming

The federal defendants' argument that the powers of the National Indian Gaming Com-

---

In determining whether [the] class III gaming [here at issue] is regulated by IGRA, the Court will view the statute as a whole.").

5. In the instant litigation, there was no allegation that the Tribe had failed to satisfy any of the steps necessary to create a valid Tribal–State Compact.

6. The federal defendants also contend that if resort to legislative history was necessary, the legislative history supports their position. The federal defendants then point to newly raised

legislative history. This legislative history does not address the issue of land already owned by an Indian Tribe at the time a Compact is approved and is of little use.

7. Both parties cited to the legislative history in their briefs. The Court's brief discussion of the statute's legislative history was appropriate inasmuch as the legislative history had been reviewed because it was raised by the parties and because the Court ascertained that the legislative history was consistent with the plain and unambiguous language of the statute.

mission ("NIGC") and the Chairman of the NIGC extend to class III gaming such that the class III gaming at issue in this litigation is subject to the provisions of 25 U.S.C. § 2719 has already been considered and rejected by the Court. Thus, the appropriate forum for reasserting this argument is on appeal rather than in a motion for reconsideration.

### D. The State of Michigan as an Indispensable Party

The federal defendants' final argument is that the Court's construction of the Tribal–State Compact between the Tribe and the State of Michigan implicates the rights of an indispensable party, the State of Michigan. The question of whether the Compact permits class III gaming on the land on which the Tribe currently conducts such gaming was an issue in this case from its inception. Since the filing of its complaint, the Tribe sought relief declaring their gaming activities lawful on the basis of the terms of the Compact. The federal defendants clearly knew that the language of the Compact was at issue in this litigation. In fact, the Tribe and the federal defendants addressed the language of the Compact at the hearing on the cross-motions for summary judgment, and the Court engaged in lengthy discourse with counsel on this issue during that hearing.

If the Court's consideration of the Compact language renders the State an indispensable party, presumably the federal defendants would have sought to require the plaintiff to add the State at an earlier stage in the litigation. The federal defendants elected, however, to wait for a decision, and now seek to claim that the State is essential after receiving a construction of the Compact with which they disagree. The State, on the other hand, admits that it was aware of the pendency of this litigation, and in fact has received and retained 5% of the revenues from the gaming here at issue. If the State truly believed their proffered interpretation of the Compact, presumably it would have moved to intervene prior to entry of judgment. In any event, the Court has already granted the State's motion for intervention, and this issue is now moot.

## III. INTERVENING DEFENDANTS' MOTION

The intervening defendant's motion also requests the Court to reconsider its opinion and order granting plaintiff's motion for summary judgment and granting plaintiff declaratory relief. Some of the arguments raised by the intervening defendant have already been addressed and rejected by this Court. Like the federal defendants' motion, the intervening defendant's motion does not purport to be based upon any change in controlling law or operative facts.

### A. Whether IGRA Regulates Indian Gaming

The intervenor's brief in support of its motion begins with a three-page overview of the differing classes of Indian gaming and the differing levels of regulation applicable to each class. Nothing contained in this background material differs greatly from the framework discussed in the Court's opinion. The intervenor then argues that the Sixth Circuit has held that the IGRA regulates gaming by Indian Tribes. In *Sault Ste. Marie Tribe v. State of Michigan*, 5 F.3d 147, 148 (6th Cir.1993), the case cited by the intervenor, the Sixth Circuit did not hold that IGRA regulates Indian gaming. Instead, the Sixth Circuit discussed IGRA's framework and then held that it lacked jurisdiction over the Indian Tribes' appeal from the district court order dismissing the State as a defendant and that an order granting a state sovereign immunity under the Eleventh Amendment was not an appealable collateral order. *Id.* at 149–150. In any event, this Court does not quarrel with the intervenor's contention that IGRA regulates Indian gaming. Indeed, this Court's ruling was not that IGRA does not regulate Indian gaming, but rather that under the facts of this case, where all the statutory conditions are met and a valid Tribal–State Compact permitting the class III gaming exists, such gaming is lawful. Thus, the intervenor's argument that IGRA regulates Indian gaming provides no basis for the Court to alter or amend the judgment.

### B. IGRA Conditions for Class III Gaming

The intervenor next argues that the IGRA regulatory system requires that three separate conditions must be met before class III gaming may occur such that all class III gaming is regulated by IGRA and 25 U.S.C. § 2719 is always applicable. The Court fully addressed the requirements in § 2710(d) in its opinion, and the intervenor's argument is in this respect, merely tautological. The intervenor also points to other provisions in IGRA which provide the Chairman of the National Indian Gaming Commission with the power to approve management contracts and tribal ordinances or resolutions, but none of these provisions address the lawfulness of the class III gaming conducted by the Tribe. Accordingly, this argument provides no basis for the Court to alter or amend the judgment.

### C. Bureau of Indian Affairs' Interpretation of § 2719

The intervenor then argues that the Court should defer to the interpretation of § 2719 by the Bureau of Indian Affairs. The Bureau of Indian Affairs' position is that § 2719 applies to all class III gaming on Indian lands acquired after October 1988, regardless of whether a Tribe enters into a valid Tribal–State Compact permitting class III gaming on particular tracts of land. The Court rejected that interpretation as nonsensical in its opinion and need not consider this same argument on a Rule 59 motion. In addition,

the Court notes that the Tribe submitted an application under § 2719 in 1994.[8] Two years later, the § 2719 application has still not been processed. The federal defendants offer no explanation as to why, if § 2719 is applicable to the gaming at issue in this litigation, the plaintiff's § 2719 application has not been processed. Because the Court finds the Bureau of Indian Affairs' interpretation of § 2719 nonsensical, the Court need not defer to its interpretation.

### D. Meaning of the Compact

Lastly, the intervenor contends that both parties to the Tribal–State Compact intended[9] and understood that § 2719 would apply to class III gaming. The intervenor contends that the Tribe has effectively secured a judicial modification of the agreement reached between plaintiff and the State of Michigan upon which the Tribal–State Compact was based, and that the intention of both parties was that § 2719 would be fully operative to any lands acquired in trust for purposes of a gaming establishment after October 17, 1988.[10] As mentioned earlier, the Tribe contended from the onset that § 2719 was inapplicable to its class III gaming because of the Tribal–State Compact. The State was aware of this litigation, but chose to acquiesce in the litigation while continuing to receive revenues from the gaming it now contends is unlawful. The State's actions for the 14 months[11] between the date the complaint was filed and the date the

---

**8.** Upon tender of that application, the Tribe's appeal of the ruling in *United States v. Keweenaw Bay Indian Community*, which determined the date the parcel of land was held in trust, was held in abeyance by the Sixth Circuit Court of Appeals.

**9.** In support of its intent of the parties argument, the State relies on the affidavit of Michael Gadola, Deputy Legal Counsel to Governor Engler at the time the Compact was signed. The affidavit speaks only to the affiant's own understanding of the Compact and IGRA, and suggests that the Governor's understanding was the same. No affidavit of Governor Engler, however, has been filed. In addition, the Compact was also approved by the Michigan Legislature, but no evidence of legislative intent has been provided by the intervening defendant to the Court. The affidavit of a single staff person, which represents

his own understanding of the Compact and the IGRA, is irrelevant to the intent of either Governor Engler or the Michigan Legislature as a body.

**10.** As an initial matter, the Court notes that the intervenor's interpretation of § 2719 as operative only as to "any lands acquired in trust for a gaming establishment" is substantially more narrow than the actual language of § 2719, which provides that "gaming regulated by this chapter shall not be conducted on lands acquired by the Secretary in trust for an Indian tribe after October 17, 1988 unless...." 25 U.S.C. § 2719(a).

**11.** The complaint was filed on September 26, 1994, but the State did not file its motion for intervention until February 20, 1995, more than two weeks after entry of judgment.

State sought to intervene belie what they now claim the Compact means.

In its opinion, the Court implicitly found that the terms of the Compact were clear and unambiguous such that resort to the intention of the parties was unnecessary. The Compact plainly provides that gaming may be conducted on Indian lands, which are specifically defined in the Compact as including "all lands currently within the limits of the Tribe's Reservation." Compact, § 2(B)(1). As the Court's opinion notes, "the land [on which the gaming at issue in this litigation is conducted] became part of the Tribe's Reservation on September 24, 1990, the date the land was held in trust for the benefit of the Tribe." 914 F.Supp. at 1501. Thus, the parcel of land is clearly and unequivocally within the definition of Indian lands in § 2(B)(1) of the Compact. In addition, Indian lands include "[a]ny lands the title to which is ... held in trust by the United States for the benefit of the Tribe...." Compact, § 2(B)(3). As the Court's opinion states, the "land on which the Tribe is conducting class III gaming was placed into trust for the benefit of the Tribe by the Department of the Interior on September 24, 1990, nearly three years before this Compact was signed," 914 F.Supp. at 1501, and this land falls within the definition of Indian lands provided in section 2(B)(3) of the Compact.

The intervenor contends that § 2(C) of the Compact was added [12] to ensure that nothing in § 2(B) of the Compact was intended to diminish the State's authority under 25 U.S.C. § 2719.[13] The language of § 2(C), however, does not support the intervenor's argument. Section 2(C) provides: "notwithstanding subsection 2(B) above, any lands which the Tribe *proposes to be taken into trust* by the United States for purposes of locating a gaming establishment thereon shall be subject to the Governor's concurrence power, pursuant to 25 U.S.C. § 2719 or any successor provisions of the law." Compact, § 2(C) (emphasis added). This provision is not applicable to the parcel of land on which the Tribe is conducting class III gaming because the land is not land which "the Tribe proposes to be taken into trust;" the land was already part of the Reservation at the time of the Compact. The position set forth by the intervenor is contrary to the plain language of the Compact, which clearly permits the class III gaming at issue in this litigation.

Accordingly, the intervenor's arguments with respect to the State's intent in entering into the Compact provide no basis to alter or amend the judgment.

## IV. CONCLUSION

The Keweenaw Bay Indian Tribe and the State of Michigan entered into a valid Tribal–State Compact on August 20, 1993. The Compact subsequently received the approval of the Michigan legislature and the Secretary of the Interior. The Tribal–State Compact clearly and unequivocally states that class III gaming may be conducted on all land part of the tribe's reservation at the time of the Compact. The land on which the Tribe currently conducts class III gaming was part of the Tribe's reservation at the time of the Compact. The State of Michigan knew, or should have known that this specific tract of land was part of the Tribe's reservation. *United States v. Keweenaw Bay Indian Community,* No. 2:92–CV–265 (W.D.Mich.),[14]

---

**12.** The inclusion of § 2(C) into the Compact corroborates and confirms the Court's construction of IGRA. As a matter of statutory construction, § 2719 does not apply to gaming on Indian land covered by a Compact. As a matter of contract, there is no reason why the Tribe and the State could not agree that the Tribe would *also* be required to follow § 2719 to lawfully conduct class III gaming on land acquired after the Compact. Such agreement is logical—the State knew what land the Tribe owned and whether gaming on such lands was a good idea. Obviously, neither the State nor anyone else knew, however,

whether class III gaming would be a good idea on land later acquired.

**13.** If § 2719 means what the State now claims, there was no reason to include the language of § 2(C) referring to land acquired after the Compact was signed into the Compact.

**14.** 1993 WL 818943, 1993 U.S.Dist. LEXIS 15664 (W.D.Mich.1993). This case was appealed to the Sixth Circuit Court of Appeals, but has been held in abeyance pending resolution of the § 2719 application filed by the Tribe. The central issue in that case is the date the particular

filed on December 23, 1992, involved Indian gaming on this specific tract of land, and received widespread publicity. In addition, the parties added a section in the Compact to make it clear that § 2719 applies to all land acquired by the Tribe *subsequent* to the signing of the Compact. The State now says that it did not really mean what is unambiguously set forth in the Compact and claims that the Tribe cannot do what is clearly permitted by the Compact. This it cannot do.

Finding no basis to alter or amend the judgment in either the federal defendants' motion or the motion filed by the intervenor, the Court now **DENIES** both motions.

An order consistent with this opinion shall issue forthwith.

### ORDER DENYING MOTIONS TO ALTER OR AMEND JUDGMENT

In accordance with the Court's written opinion of even date,

**IT IS HEREBY ORDERED** that defendants United States of America, U.S. Department of the Interior and U.S. Department of Justice's motion for reconsideration or, in the alternative, to alter or amend judgment (docket # 37) is **DENIED.**

**IT IS FURTHER ORDERED** that intervening defendant State of Michigan's motion to alter or amend (docket # 39) is **DENIED.**

tract of land on which the Tribe currently conducts class III gaming was taken into trust. No matter which party prevails on appeal, under all alternative dates involved in that litigation, the land was taken into trust and became part of the Tribe's Reservation well before the date of the Compact.