Civ. No. .92–3009.

United States District Court, D. South Dakota, S.D.

Jan. 8, 1993.

---

Steven C. Emery, Mark L. Van Norman, Timothy W. Joranko, Cheyenne River Sioux Tribe, Butte, SD, for plaintiff.

Lawrence E. Long, Chief Deputy Atty. Gen., Pierre, SD, Richard E. Helsper, Brookings, SD, for defendants.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, Chief Judge.

Plaintiff, Cheyenne River Sioux Tribe (Tribe), has brought this action against the State of South Dakota and certain state officials (State) pursuant to the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2710(d)(7)(A). The Tribe asks that this Court find that the State has not negotiated in good faith on a Tribal–State gaming compact under the IGRA, and asks that this Court order the State and Tribe to conclude a compact within 60 days pursuant to 25 U.S.C. § 2710(d)(7)(B)(iii). The Tribe also asks that if no compact is concluded, that the Court appoint a mediator under § 2710(d)(7)(B)(iv). Defendants allege in their answer that the State has negotiated in good faith, asserts the affirmative defenses that the action is barred by the Eleventh and

Tenth Amendment, and asks that the action be dismissed.

The plaintiff has made a Motion for Summary Judgment and a Motion for a Preliminary Injunction.

The defendants have made a Motion for Relief Under Rule 56(f) or Rule 26(f). This motion was denied at the hearing because it appears that both parties have fully briefed the issues raised by the motions for summary judgment and are prepared to proceed thereon.

The motions were heard on August 27, 1992, have been fully briefed and are now ready for decision.

## DISCUSSION

In 1988, Congress enacted the IGRA, 25 U.S.C. §§ 2701 *et seq.*, to allow states the authority to negotiate tribal-state gaming compacts with Indian tribes.

The IGRA divides gaming into three classes. Class I games are social games for prizes of minimal value or traditional forms of Indian gaming conducted at tribal ceremonies or celebrations. 25 U.S.C. § 2703(6). Class II gaming encompasses bingo and similar games including certain non-banking card games, as well as banking card games operated on or before May 1, 1988. 25 U.S.C. § 2703(7). All other forms of gaming, including casino-type gambling, pari-mutuel horse and dog racing, simulcasting, and lotteries are designated Class III gaming. 25 U.S.C. § 2703(8). Class III gaming, the subject of this litigation, can only be conducted pursuant to a tribal-state gaming compact, subject to the exceptions in 25 U.S.C. § 2710(d)(7)(B)(vii) providing for a mediator and Secretary of the Interior approval if tribe and state are unable to agree to a compact.

Class I gaming conducted on Indian lands is within the exclusive jurisdiction of the tribes. 25 U.S.C. § 2710(a)(1). Class II gaming is within the jurisdiction of the tribes, but is subject to the provisions of the IGRA. 25 U.S.C. § 2710(a)(2). A tribe may engage in, or license or regulate, Class II gaming if the state allows such gaming for any purpose by any person or organization

and federal law does not specifically prohibit such gaming on Indian lands and the governing body of the tribe adopts an ordinance or resolution which is approved by the Chairman of the National Indian Gaming Commission. 25 U.S.C. § 2710(b)(1)(A) & (B). Class III gaming activities are lawful only if they are authorized by a tribal resolution approved by the Chairman of the National Indian Gaming Commission, located in a state that permits such gaming for any purpose by any person or organization, and conducted in conformance with a tribal-state compact. 25 U.S.C. § 2710(d)(1)(A)–(C).

### 1.

### *Eleventh Amendment*

The defendants have asserted the claim that this action is barred by the Eleventh Amendment as an affirmative defense in their answer and in resistance to plaintiff's Motion for Summary Judgment and Alternative Motion for Preliminary Injunction.

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. Const., amend. XI.

Courts that have considered this issue in relation to Indian gaming cases have reached differing conclusions.

■ This court agrees with the holding that the Eleventh Amendment bars actions under 42 U.S.C. § 1983 against state and state officials acting in their official capacity. *Poarch Band of Creek Indians v. Alabama,* (I), 776 F.Supp. 550 (S.D.Ala.1991), (II), 784 F.Supp. 1549 (S.D.Ala.1992).

■ Courts have disagreed on whether suits brought under the IGRA are barred by the Eleventh Amendment. Such suits were held to be barred by the Eleventh Amendment by the *Poarch* court, as well as the courts in *Ponca Tribe of Oklahoma v. Oklahoma,* CIV 92–988–T (W.D.Okla. Sep. 8, 1992), and *Sault Ste. Marie Tribe of Chippewa Indians v. Michigan,* 800 F.Supp. 1484

(W.D.Mich.1992). Such suits were held to be not barred by the Eleventh Amendment in *Seminole Tribe of Florida v. Florida,* 801 F.Supp. 655 (S.D.Fla.1992).

A middle ground position was taken in *Spokane Tribe of Indians v. Washington,* 790 F.Supp. 1057 (E.D.Wash.1991). That court held that the Eleventh Amendment barred direct suit against the state, but that the court had jurisdiction over the individually named defendants under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The underlying concern of the *Spokane Tribe* court was that a dismissal of the action would deprive the plaintiff Tribe of a forum to address its grievances.

It is my view that the Eleventh Amendment does not preclude an action under the IGRA, 25 U.S.C. § 2710(d)(7)(A), because no monetary or injunctive relief would actually be sought against the state.

Under the IGRA, no penalties can be assessed against a state for failing to negotiate. What the state would lose by such a stance would be possible input into a Tribal–State gaming compact. If a state fails to negotiate, the Secretary of the Interior, after consultation with the Tribe, could then prescribe the procedures under which the Tribe could conduct Class III gaming on the Indian lands over which the Tribe has jurisdiction, and the state would lose its input into the process.

The State of South Dakota has actively engaged in negotiating State–Tribal gaming compacts. It has reaped benefits from these negotiations by being able to provide input into how Indian gaming will be conducted within the state. The Eleventh Amendment cannot be invoked to prevent a review of whether specific negotiations are proceeding in good faith.

### 2.

### *Tenth Amendment*

■ The State also contends that the IGRA violates the Tenth Amendment. The Tenth Amendment provides:

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

U.S. Const., amend. X.

The State contends that Congress has violated the Tenth Amendment by forcing states to negotiate State–Tribal gaming compacts. However, the IGRA does not "force" states to negotiate compacts with Indian tribes.

In *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), the Supreme Court held that California regulated rather than prohibited gambling and, as a result, California could not enforce its gambling laws within Indian reservations. The Eighth Circuit subsequently held that South Dakota regulates, rather than prohibits, gambling. *United States v. Sisseton–Wahpeton Sioux Tribe,* 897 F.2d 358, 368 (8th Cir.1990).

The IGRA was enacted in response to the Supreme Court's decision in *Cabazon.* Congress wished to give states a certain amount of input into gambling on Indian reservations. S.Rep. No. 446, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071.

The IGRA gives states the right to get involved in negotiating a gaming compact because of the obvious state interest in gaming casino operations within the state boundaries, but does not compel it.

Several possibilities exist under the IGRA in an action brought by an Indian tribe against a state. First, the state and tribe can negotiate on and enter into a compact. Second, the state and tribe can negotiate, but fail to agree on a compact. The court must then determine whether the State has negotiated in good faith; and if the Court determines that the State did negotiate in good faith, then the action is either dismissed or stayed for additional negotiations. If the court determined that the State had not negotiated in good faith, then the Court must order the State and Tribe to conclude a compact within a 60–day period, and if no compact is agreed upon, each side submits their last best offer for a compact, and a court-appointed mediator picks one. The State can consent thereto, and if it does not, the Secretary of the Interior would prescribe procedures under which the Tribe could con-

duct Class III gaming on Indian lands within the state over which the Tribe has jurisdiction.

Third, if a State refuses to negotiate at all, the Court would, in an action brought by the Tribe, require that a compact be concluded within 60 days. If none were concluded, and only the Tribe submitted a proposed compact, it follows that the mediator would select the Tribe's compact if it complied with applicable Federal law. Again, the State could either approve the compact, or the Secretary of the Interior would prescribe procedures under which the Tribe could conduct Class III gaming on Indian lands within the state over which it has jurisdiction. A state proceeding in this manner would lose all input into casino gaming on Indian lands within its boundaries.

The IGRA does not "force" states to compact with Indian tribes regarding Indian gaming. As a result, the IGRA does not violate the Tenth Amendment.

### 3.

### 42 U.S.C. § 1983

■ While the primary thrust of plaintiff's complaint is based on the IGRA, it is not necessary to consider in depth whether summary judgment should be granted on this claim because the plaintiff has not in its brief or supporting material attempted to show that it is entitled to judgment as a matter of law on the § 1983 claims.

### 4.

### IGRA

The plaintiff seeks by its summary judgment motion to obtain an order finding that the defendants have failed to negotiate in good faith, thereby triggering the procedures set out in 25 U.S.C. § 2710(d)(7)(B).

The plaintiff seeks by its motion for preliminary injunction to require the defendants to negotiate on off-reservation locations, keno and bet limits.

#### a. Good Faith

■ The IGRA provides that upon receiving a request from an Indian tribe "the State shall negotiate with the Indian tribe in good faith to enter into such a compact." 25

U.S.C. § 2710(d)(3)(A) & (B). The Cheyenne River Sioux Tribe requested the State of South Dakota to negotiate a tribal-state compact governing Class III gaming on January 9, 1991.

The Tribe asserts that the State has not negotiated in good faith by refusing to negotiate concerning off-reservation locations, keno and bet limits and has attempted to tie gaming negotiations to unrelated state-tribal disputes.

■ It is the Court's view that the determination of whether the State is negotiating in good faith should be made on the basis of the transcripts of the negotiating sessions. The record indicates that both sides have been doing a certain amount of posturing outside of the negotiating process. Conversations between the Governor and Tribal Chairman, letters staking out various negotiating positions, and press releases do not constitute negotiating sessions. They may explain the positions of the parties as they enter into the negotiating process, but they do not necessarily reflect the end result that could result from bona fide negotiating.

Formal negotiations were conducted on February 8, April 11, June 10, July 9, and August 12, 1991. Neither the Tribe nor State have sought to initiate any further negotiating sessions. On the record before the Court on the Tribe's Motion for Summary Judgment, the Court is unable to say that the State has not negotiated in good faith, and the motion will be denied. Additional negotiating sessions should be scheduled as soon as practicable.

#### b. Bet Limits, Keno and Locations

Areas of disagreement existing at the time negotiations were discontinued were:

(1) the Tribe wished to obtain higher bet limits than the State was willing to permit;

(2) the Tribe wanted to conduct Keno and other casino type games not permitted under other State-tribal compacts; and,

(3) the Tribe desired to obtain a compact for two off-reservations sites, one in Stanley County about 4 miles west of Ft. Pierre and the other at Pluma in the Black Hills.

### (1) Bet Limits

■ The issue of bet limits is not subject to direction by the Court. The record does not support a finding of bad faith negotiating on this issue at this time.

### (2) Keno and Other Games

■ One of the requirements for the operation of Class III gaming activities on Indian lands is that the state in which such gaming is located must permit "such gaming for any purpose by any person, organization, or entity." 25 U.S.C. § 2710(d)(1)(B). The Tribe contends that since the State offers "video keno" on its state-wide video lottery system, the State is required to permit the Tribe to offer the traditional form of stand-alone keno.

The "such gaming" language of § 2710(d)(1)(B) does require the State to negotiate the subject of video keno which it presently offers. It does not appear that the State permits the traditional form of stand-alone keno. Based on the present record, the State is not required to negotiate that form of keno.

■ The Tribe also alleges that the State allows charities to offer other casino games such as roulette and craps at Las Vegas fund raiser nights. Therefore, the Tribe argues that it is entitled to compact for those games. The State responds that such fund raisers are illegal and if it is made aware of such activities it will enforce state laws prohibiting such games. The Tribe counters that the State has been made aware of such activities and has not taken any action. The present record is not adequate to determine whether the State actually "permits" these activities to occur.

### (3) Locations

■ The casino location issue raises legal and factual issues which cannot be addressed on the present record. The State maintains that a dispute exists as to whether the sites near Pluma and Fort Pierre are Indian lands within the meaning of the IGRA.

The National Indian Gaming Commission has defined Indian lands as:

(a) Land within the limits of an Indian reservation: or

(b) Land over which an Indian tribe exercises governmental power and that is either—

(1) Held in trust by the United States for the benefit of any Indian tribe or individual; or

(2) Held by an Indian tribe or individual subject to restriction by the United States against alienation.

25 C.F.R. § 502.12.

The sites at Ft. Pierre and Pluma are not within the limits of an Indian reservation. See Act of March 2, 1889, ch. 405, 25 Stat. 888. Consequently, those sites fail under part (a) of the regulation.

In analyzing part (b) of the regulation, the primary dispute relates to whether the Tribe exercises governmental power over the locations. The Court is unable to determine this issue on the present record. There is nothing in the record to determine: (1) whether the areas are developed; (2) whether tribal members reside in those areas; (3) whether any governmental services are provided and by whom; (4) whether law enforcement on the lands in question is provided by the Tribe or the State; and (5) other indicia as to who exercises governmental power over those areas.

Also, the State has presented evidence that the Pluma site is not completely in trust.

The parties may present whatever evidence on the issue of Indian lands they deem relevant. However, based on the present record the Court cannot make a determination at this time as to whether the State is required to negotiate as to these two locations.

Therefore,

Upon the record herein,

IT IS ORDERED:

(1) That the plaintiff's Motion for Summary Judgment, Doc. 11, is denied.

(2) That the plaintiff's Motion for Preliminary Injunction, Doc. 12, is denied.

(3) That the defendants' Motion for Summary Judgment, Doc. 29, is denied.

(4) That the action will be stayed for a reasonable time pending further negotiations by the parties.