136 F.3d 469
 KEWEENAW BAY INDIAN COMMUNITY, Plaintiff-Appellee,
v.
UNITED STATES of America; U.S. Department of Interior;
U.S. Department of Justice, Defendants-Appellants (96-2410),
Bureau of Indian Affairs, et al., Defendants,
State of Michigan, Intervenor-Defendant-Appellant (96-2204).
 Nos. 96-2204, 96-2410.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 9, 1997.
Decided Feb. 10, 1998.
 
 Joseph P. O'Leary (briefed), Keweenaw Bay Indian Community Tribal Center, Baraga, MI, Konrad D. Kohl (argued and briefed), Kohl, Harris & Peters, Metamora, MI, Keweenaw Bay Indian Community.
 Edward J Passarelli, Environmental & Natural Resources Division, Department of Justice, Washington, DC, for U.S., U.S. Department of Interior and U.S. Department of Justice in No. 96-2204.
 John M. Cahill (briefed), Office of the Attorney General of Michigan, Lottery and Racing Division, Lansing, MI, Keith D. Roberts (argued and briefed), Asst. Attorney Gen., Office of the Attorney General of Michigan, Lansing, MI, for State of Michigan in No. 96-2204.
 Edward J. Shawaker (argued and briefed), U.S. Department of Justice, Land & Natural Resources Division, Washington, DC, Edward J Passarelli, Environmental & Natural Resources Division, Department of Justice, Washington, DC, for U.S. in No. 96-2410.
 Edward J. Shawaker, Joan M. Pepin, U.S. Department of Justice, Land & Natural Resources Division, Washington, DC, Edward J Passarelli, Environmental & Natural Resources Division, Department of Justice, Washington, DC, for U.S. Department of Interior and U.S. Department of Justice in No. 96-2410.
 Joan M. Pepin, U.S. Department of Justice, Land & Natural Resources Division, Washington, DC, for Bureau of Indian Affairs in No. 96-2410.
 John M. Cahill, Office of the Attorney General of Michigan, Lottery and Racing Division, Lansing, MI, Keith D. Roberts (argued ), Asst. Attorney Gen., Office of the Attorney General of Michigan, Lansing, MI, for State of Michigan in No. 96-2410.
 Before: RYAN, SILER, and COLE, Circuit Judges.
 OPINION
 COLE, Circuit Judge.
 
 
 1
 This appeal involves a dispute among an American Indian tribe, the federal government and the State of Michigan regarding the applicability of a particular provision of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et seq., to Indian gaming that is the subject of a tribal-state gaming compact. The district court concluded that the IGRA provision at issue, 25 U.S.C. § 2719, does not apply to gaming that is the subject of a valid tribal-state compact, one of the means of regulating Indian gaming created by the IGRA. The federal defendants-appellants, which include the United States of America, the U.S. Department of the Interior and the U.S. Department of Justice, and the intervenor-appellant State of Michigan appeal the district court's resolution of the declaratory judgment action, arguing that § 2719 applies to all Indian gaming subject to the IGRA, including gaming that is the subject of a valid tribal-state compact. For the following reasons, we conclude that 25 U.S.C. § 2719 applies to Indian gaming that is the subject of a tribal-state compact and we accordingly reverse and remand.
 
 I. FACTS AND PROCEEDINGS BELOW
 
 2
 On October 14, 1988, the Keweenaw Bay Indian Community ("the Community")[1] obtained title to a parcel of land in Marquette County, Michigan. Keweenaw Bay Indian Community v. United States, 914 F.Supp. 1496, 1498 (W.D.Mich.1996). The land was taken into trust by the U.S. Government for the benefit of the Community in September 1990. Id.
 
 
 3
 On August 20, 1993, the Community and the State of Michigan entered into a tribal-state gaming compact pursuant to the IGRA. This compact authorizes Class III gaming activities on the "Indian lands" of the Community within the State of Michigan.[2] The compact specified that it would become effective upon the fulfillment of the following four conditions: (1) endorsement by the tribal chairperson after approval by the Tribal Council; (2) endorsement by the Michigan Governor and concurrence in the endorsement by resolution of the Michigan legislature; (3) approval by the Secretary of the Interior of the United States; and (4) publication in the Federal Register. Compact § 11, J.A. 117. Each of these conditions has indisputably been fulfilled. Keweenaw Bay Indian Community v. United States, 940 F.Supp. 1139, 1142 n. 5 (W.D.Mich.1996). In addition, statutory compact requirements were fulfilled. On March 3, 1994, the tribal gaming ordinance promulgated by the Community was approved by the National Indian Gaming Commission, as required by one of the IGRA compact provisions, 25 U.S.C. § 2710(d)(2)(B).[3]
 
 
 4
 On August 19, 1994, the Community submitted an application to the Department of the Interior for approval of the gaming at issue pursuant to 25 U.S.C. § 2719. In response, the Bureau of Indian Affairs took the position that the Community must submit to the procedures set forth in 25 U.S.C. § 2719 before it could conduct Class III gaming on the land. The Community disagreed with this position and in September 1994, opened a Class III gaming facility on its land in Marquette County, Michigan[4] and filed this action for declaratory and injunctive relief to allow Class III gaming on the tract of land.[5] The federal defendants counterclaimed, seeking a declaration that the gaming activities conducted at the Community's casino are in violation of state and federal law. The federal defendants also sought an order enjoining the Community from licensing, authorizing or operating Class III gaming on the land until the requirements of 25 U.S.C. § 2719 had been met; it also sought abatement of the gaming and confiscation of the unlawful gambling devices pursuant to state law.
 
 
 5
 The district court concluded that the IGRA does not require that Class III gaming activities authorized by a tribal-state compact also undergo the approval requirements contained in 25 U.S.C. § 2719. The district court reasoned that Class III gaming authorized and regulated by a tribal-state compact does not constitute "gaming regulated by" the IGRA and thus the gaming at issue was not regulated by § 2719, because it applies only to "gaming regulated by" the IGRA. See 25 U.S.C. § 2719(a) (prohibiting "gaming regulated by this chapter " absent certain statutory exceptions, on non-reservation lands that are not contiguous to a reservation and which are taken into trust by the United States government after October 17, 1988 (emphasis added)). The district court noted that both the Secretary of the Interior and Michigan's Governor had approved the compact and it would be odd for Congress to require the Community to resubmit gaming permitted by the compact to the Secretary of the Interior and the Governor, as would be required if § 2719 were applied. The district court granted summary judgment to the Community. See Keweenaw Bay Indian Community v. United States, 914 F.Supp. 1496 (W.D.Mich. Feb. 5, 1996) ("Keweenaw Bay I ").
 
 
 6
 The federal defendants then moved for the district court's reconsideration of its judgment. The State of Michigan ("State" or "Michigan") entered the picture at this point and moved to intervene in the action and also for reconsideration of the district court's judgment. The district court granted the State's motion to intervene and denied the federal defendants' and the State's motions for reconsideration. Keweenaw Bay Indian Community v. United States, 940 F.Supp. 1139 (W.D.Mich. Aug. 27, 1996) ("Keweenaw Bay II "). In the course of doing so, the district court rejected the alternative contention that the terms of the compact itself provided for § 2719's applicability. The federal defendants and the State of Michigan subsequently filed this appeal.
 
 II. THE IGRA AND RELEVANT PROVISIONS
 
 7
 In California v. Cabazon Band of Mission Indians, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), the Supreme Court sharply limited the power of the states to apply their gambling laws to Indian gaming. An essential element of its decision was that Congress had not acted specifically to make state gambling laws applicable in Indian country. In Cabazon, the Court made clear that Congress had to create for the states any effective ability to prevent or regulate Indian gaming, and in response to Cabazon, Congress enacted the IGRA. See Confederated Tribes of Siletz Indians of Oregon v. United States, 110 F.3d 688, 692 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 625, 139 L.Ed.2d 606 (1997); Pueblo of Santa Ana v. Kelly, 104 F.3d 1546, 1548 n. 3 (10th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 45, 139 L.Ed.2d 11 (1997). Congress enacted the IGRA in 1988 and thereby created a framework for the regulation and management of gambling on Indian land, see Seminole Tribe of Florida v. Florida, 517 U.S. 44, 45-50, 116 S.Ct. 1114, 1119-20, 134 L.Ed.2d 252 (1996), which included a role for the states in the regulation of Indian gaming, Confederated Tribes, 110 F.3d at 692.
 
 
 8
 The IGRA divides Indian gaming into three categories, or "classes," with different regulatory schemes for each. Class I gaming encompasses "social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as a part of, or in connection with, tribal ceremonies or celebrations." 25 U.S.C. § 2703(6). Class I gaming on Indian lands "is within the exclusive jurisdiction of the Indian tribes" and is not subject to the IGRA. 25 U.S.C. § 2710(a)(1). Class II gaming consists of bingo played for prizes, card games and games similar to bingo (e.g., punch boards, instant bingo, and pull-tabs). 25 U.S.C. § 2703(7)(A). Class II gaming does not include any "banking card games, including baccarat, chemin de fer or blackjack" or any "electronic or electromechanical facsimiles of any game of chance or slot machines of any kind." 25 U.S.C. § 2703(7)(B). Class II gaming is subject only to tribal regulation and federal oversight by the National Indian Gaming Commission. See 25 U.S.C. § 2710(a), (b) & (c); 25 U.S.C. § 2706(b); Wisconsin Winnebago Nation v. Thompson, 22 F.3d 719, 721 & n. 2 (7th Cir.1994).
 
 
 9
 Any form of gaming not described as part of Class I or Class II is Class III gaming. 25 U.S.C. § 2703(8). Class III gaming has been referred to as "high-stakes casino-style" gaming, Pueblo, 104 F.3d at 1549, and "includes such things as slot machines, casino games, banking card games, dog racing, and lotteries." Seminole Tribe, 517 U.S. at 45-48, 116 S.Ct. at 1119. Class III gaming is subject to, inter alia, 25 U.S.C. § 2710(d)(1), which states:
 
 
 10
 (d) Class III gaming activities; authorization; revocation; Tribal-State compact
 
 
 11
 (1) Class III gaming activities shall be lawful on Indian lands only if such activities are--
 
 
 12
 (A) authorized by an ordinance or regulation that--
 
 
 13
 (i) is adopted by the governing body of the Indian Tribe having jurisdiction over such lands,
 
 
 14
 (ii) meets the requirements of subsection (b) of this section, and
 
 
 15
 (iii) is approved by the Chairman,
 
 
 16
 (B) located in a State that permits such gaming for any purpose by any person, organization, or entity, and
 
 
 17
 (C) conducted in conformance with a Tribal-State compact entered into by the Indian Tribe and the State under paragraph (3) that is in effect.
 
 
 18
 25 U.S.C. § 2710(d)(1) (emphasis added).[6] The IGRA provides that tribes are entitled to engage in all forms of Class III gaming that a state permits for other citizens and requires the states to negotiate in good faith toward the execution of tribal-state compacts. 25 U.S.C. §§ 2710(d)(1)(B) & 2710(d)(3)(A).
 
 
 19
 At issue in this case is whether another IGRA provision, 25 U.S.C. § 2719, is also applicable to Class III gaming that is the subject of a compact. Section 2719(a) generally prohibits gaming regulated by the IGRA on "after-acquired" (acquired in trust by the federal government for the benefit of a tribe after October 17, 1988), off-reservation lands, with exceptions for certain circumstances. The only applicable circumstance is that gaming on such "after-acquired" land is permitted if the Secretary of the Interior determines that gaming on the land would be in the best interest of the Community and not detrimental to the surrounding community, after consultation with state and local officials, including officials of nearby tribes; in addition, the governor of the state must concur in the Secretary of the Interior's determination. See 25 U.S.C. § 2719(b)(1)(A).[7]III. DISCUSSION
 
 A. Applicability of 25 U.S.C. § 2719
 
 20
 We must determine if 25 U.S.C. § 2719, a provision generally prohibiting gaming on certain Indian lands acquired after October 17, 1988 absent certain exceptions, applies to Class III gaming when the land is the subject of a valid tribal-state compact which permits Class III gaming on the land. In other words, when a tribe enters a valid, approved state-tribal compact for Class III gaming, is the gaming also governed by 25 U.S.C. § 2719, or are the statutory provisions related to the compact procedures the only IGRA provisions governing the gaming?
 
 
 21
 We review de novo orders granting summary judgment based on the interpretation of a federal statute. United States v. Stephens, 118 F.3d 479, 481 (6th Cir.1997). Also presented are appeals from the district court's denial of the Fed.R.Civ.P. 59(e) motions to reconsider.[8] We typically review denials of such motions for an abuse of discretion, but where a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, as it did here, we conduct a de novo review. See National Leadburners Health and Welfare Fund v. O.G. Kelley & Co., Inc., 129 F.3d 372, 374 (6th Cir.1997). We now turn to the statutory interpretation issue presented.
 
 1.
 
 22
 The federal appellants argue that § 2719 permits gaming on certain Indian lands acquired in trust after October 17, 1988 only if certain conditions are met, none of which have been met. They contend that § 2719 applies to the gaming at issue based on the plain language of § 2719(a), which provides that § 2719's general prohibition applies to "gaming regulated by this chapter." The federal appellants argue that the district court erred in its reading of the statute by concluding that § 2719 does not apply to Class III gaming authorized by a compact. They disagree with the district court's reading of § 2710(d)(1) as authorizing Class III gaming as long as a valid tribal-state compact authorizes the gaming. The federal appellants contend that, contrary to the district court's assessment, conformance with § 2710 via a valid, approved compact is a necessary but not a sufficient authorization for a tribe's gaming activities and that § 2719 remains applicable to the gaming at issue. The State of Michigan echoes the federal appellants' argument, contending that the plain language of § 2719(b) contains the only exceptions to the operation of § 2719(a)'s general prohibition of gaming on certain lands acquired in trust after October 17, 1988.
 
 
 23
 The Community argues that by its own terms § 2719 applies only to "gaming regulated by [the IGRA]," see § 2719(a), and that because § 2710(d)(2)(C) provides that "Class III gaming ... shall be fully subject to the terms and conditions of the Tribal-State compact," the compact regulates the gaming at issue. Thus, in the Community's view, § 2719 does not apply to Class III gaming authorized by a tribal-state compact because the compact, and not the IGRA, regulates such gaming. The Community argues that such an interpretation fits with Congress's purposes of promoting Indian gaming and providing states with a role in the regulation of Class III Indian gaming.
 
 
 24
 Absent an ambiguity or a result at odds with a statute's purposes, we must interpret a statutory provision according to its plain meaning. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); Nixon v. Kent County, 76 F.3d 1381, 1386 (6th Cir.1997). Section 2719(a) provides that except for certain listed exceptions, "gaming regulated by this chapter shall not be conducted on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988" (emphasis added). The Community's reasoning is that § 2719 provides that it only applies to gaming regulated by the IGRA, and the very governance of the compact takes the gaming at issue outside of the IGRA. This interpretation of the statute is undermined by the fact that any gaming subject to a tribal-state compact is necessarily regulated by the IGRA because (1) the compact mechanism is created and governed by the IGRA, see 25 U.S.C. § 2710(d), and (2) provisions of the IGRA other than the compact provisions regulate compact-authorized gaming, see, e.g., 25 U.S.C. § 2712(a) (providing Chairman of National Indian Gaming Commission with approval power over pre-1988 Class III tribal gaming ordinances); 25 U.S.C. § 2713 (providing National Indian Gaming Commission with power to levy civil penalties and to order temporary closure of Indian gaming). As such, it is clear that compact-authorized gaming is regulated by the IGRA. Accordingly, § 2719's general prohibition and the prerequisites to its exceptions (namely, the Interior Secretary's determination, after consultation with local and tribal leaders, that the proposed gaming is in best interest of tribe and would not be detrimental to surrounding community, as well as gubernatorial concurrence, see n.7 supra ) apply to Class III gaming authorized by a valid tribal-state compact. See Sokaogon Chippewa Community (Mole Lake Band of Lake Superior Chippewa) v. Babbitt, 929 F.Supp. 1165, 1169 (W.D.Wis.1996) ("off-reservation gaming is permitted only if [conditions of § 2719(b)(1)(A) are satisfied]" (emphasis added)); see, e.g., Forest County Potawatomi Community of Wisconsin v. Doyle, 1993 WL 765438, at * 3, * 5 (W.D.Wis.1993) (unpublished) (Class III gaming enterprise approved under § 2719 process and a valid, approved tribal-state compact was also reached), aff'd, 45 F.3d 1079 (7th Cir.1995); see also Sokaogon Chippewa Community (Mole Lake Band of Lake Superior Chippewa) v. Babbitt, 961 F.Supp. 1276 (W.D.Wis.1997) (considering § 2719 Interior Secretary approval process and accepting notion that § 2719 applies to Class III gaming), reconsidering in part, 929 F.Supp. 1165. A valid, approved compact is a necessary, but not a sufficient, condition for Class III gaming. See 25 U.S.C. § 2710(d)(1) (providing that Class III gaming activities "shall be lawful on Indian lands only if such activities are ... conducted in conformance with a valid Tribal-State compact" (emphasis added)). Just as the Interior Secretary's approval of a Class III gaming proposal does not override the simultaneous compact requirement under § 2710 or the gubernatorial concurrence requirement under § 2719(b)(1)(A), see Pueblo, 104 F.3d 1546; Confederated Tribes, 110 F.3d 688; see also Coeur d'Alene Tribe v. Idaho, 842 F.Supp. 1268 (D.Idaho 1994) (under IGRA, state could not operate gaming on Indian reservation absent tribal ordinance and tribal-state compact), aff'd, 51 F.3d 876 (9th Cir.1995), the existence of a valid, approved compact does not eliminate other statutory requirements, in this case, conformity with § 2719. To find that the existence of a valid, approved tribal-state compact somehow eliminates other IGRA provisions would obviate the plain language of the statute and its establishment of a federal regulatory regime through statutory standards and the National Indian Gaming Commission. Like § 2719(b)(1)(A)'s requirement that a state's governor concur in the waiver of the general gaming prohibition for a gaming proposal, the compact process simply adds a local governmental component to the regulation of Class III Indian gaming. See Confederated Tribes, 110 F.3d at 695 (characterizing gubernatorial concurrence requirement under § 2719 as prerequisite local approval to § 2719's allowance of off-reservation gaming).
 
 
 25
 Our reading of § 2719 does not produce a result that is at odds with the IGRA's purposes, and thus we have no reason to turn away from the plain meaning of the statute. The IGRA's articulated purposes are:
 
 
 26
 (1) to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments;
 
 
 27
 (2) to provide a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players; and
 
 
 28
 (3) to declare that the establishment of independent Federal regulatory authority for gaming on Indian lands, the establishment of Federal standards for gaming on Indian lands, and the establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue.
 
 
 29
 25 U.S.C. § 2702; see also Pueblo, 104 F.3d at 1548 (summarizing same legislative purposes). Interpretation of the IGRA in a manner urged by the Community would contradict the IGRA's stated purpose of creating a federal regulatory regime as well as the intent to protect Indian gaming from organized crime. See Pueblo of Santa Ana v. Kelly, 932 F.Supp. 1284, 1292 (D.N.M.1996) (discussing differences between Class II and Class III gaming requirements, tribal-state compact's role as "an additional requirement" for Class III gaming and tribal-state compact's intended function as protection against infiltration of organized crime into high-stakes gambling), aff'd, 104 F.3d 1546 (10th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 45, 139 L.Ed.2d 11 (1997); see also S.Rep. No. 100-446, at 13, reprinted in 1988 U.S.C.C.A.N. at 3083 (discussing compact process and its role in regulation of complex and sophisticated forms of gaming enterprises). Section 2719 concerns a distinct sphere of Indian gaming: off-reservation gaming facilities on land acquired after the IGRA's enactment. The two statutory sections are not an "either-or" proposition. Reading the compact provisions as an opportunity to forego regulation by the IGRA would clearly run afoul of Congress's stated goals and would produce an absurd result.
 
 2.
 
 30
 In considering the meaning of the IGRA provisions at issue, the district court reasoned that it would be "nonsensical" to interpret the statute so that § 2719 applied to the compact-authorized gaming because such a reading would require the Governor of Michigan and the Interior Secretary each to approve twice the gaming at issue. Keweenaw Bay I, 914 F.Supp. at 1502-03. The district court's reasoning on this point is flawed. The Interior Secretary's two sets of approvals are of different natures and the Michigan Governor's endorsement of the compact was required pursuant only to this compact's terms so that, if § 2719 were applicable, he would indeed have two separate opportunities, in this case, to endorse this Class III gaming plan.
 
 
 31
 The Interior Secretary's involvement is at two levels. He must review every compact for Class III gaming on all Indian lands. 25 U.S.C. § 2710(d)(2)(C) & (d)(8). The Interior Secretary also reviews gaming activities to be conducted on certain non-reservation lands that are acquired by the federal government in trust for tribes after October 17, 1988 and determines if § 2719's general prohibition of Class II and Class III Indian gaming on such lands should be waived. 25 U.S.C. § 2719(b)(1)(A). The Interior Secretary may disapprove a compact only if the compact violates an IGRA provision, any other federal law or the United States' trust obligations to a tribe. 25 U.S.C. § 2710(d)(8)(B). In contrast, the Interior Secretary may determine that § 2719's general prohibition of off-reservation Indian gaming on certain lands will not apply if "after consultation with the Indian tribe and appropriate State, and local officials, including officials of other nearby Indian tribes, [he] determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination." 25 U.S.C. § 2719(b)(1)(A). This discretionary waiver is very different from the § 2710 approval of a compact as it involves a "best interests" determination which requires consultation with local and tribal officials and a determination that the proposed gaming would not be detrimental to the surrounding community. In contrast, the Secretary's disapproval of a compact is limited to the aforementioned statutorily specified circumstances. Thus, the two Interior Secretary approvals necessary in this case are clearly of a different nature.
 
 
 32
 Regarding obtaining the Michigan Governor's "approval" twice, we point out that a governor's endorsement of a compact as required by the terms of a compact is coincidental, varied and dependent on the relevant state's laws. See, e.g., Pueblo, 104 F.3d at 1559 (deciding that Governor of New Mexico lacked authority, under New Mexico Constitution or state statute, to bind state to tribal-state compacts). Thus, it is not determinative of the meaning of the IGRA's provisions. In addition, the Michigan Governor's endorsement of the compact per the terms of the compact itself is, like the Interior Secretary's two distinct instances of involvement, of a qualitatively different nature from his concurrence in the Interior Secretary's discretionary "best-interests" waiver of § 2719's general gaming prohibition. See Confederated Tribes, 110 F.3d at 695-98, 696 (discussing nature of gubernatorial concurrence in Interior Secretary's determination as "plac[ing] restrictions on the Executive's ability to choose which land is taken into trust for gaming purposes"). In sum, despite the context of state governors' sometimes and varied degrees of involvement in a compact's negotiation, we see no nonsensical result in according § 2719(b) its plain meaning, which explicitly requires the Interior Secretary's best interests determination and a gubernatorial concurrence in that determination.
 
 
 33
 B. The District Court's Interpretation of the Compact
 
 
 34
 The appellants alternatively argue that the district court erred in granting the Community summary judgment based on its conclusion that the compact did not provide that § 2719 applied to the gaming at issue. Given our conclusion regarding the applicability of § 2719 to the gaming at issue, we need not consider this alternative argument regarding the district court's interpretation of the compact.
 
 C. Injunction
 
 35
 Finally, the federal appellants request that we instruct the district court to issue an injunction against the Community's gaming activities. Given that the district court did not consider the appellants' request for injunctive relief, we leave the issue for the district court to address in the first instance. See, e.g., McCarthy v. Recordex Service, Inc., 80 F.3d 842, 857 n. 23 (3d Cir.1996); Alaska Wilderness Recreation and Tourism Ass'n v. Morrison, 67 F.3d 723, 732 (9th Cir.1995).
 
 IV. CONCLUSION
 
 36
 For the foregoing reasons, we REVERSE and REMAND to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 In its brief, the Keweenaw Bay Indian Community refers to itself as "the Community" while the appellants and the district court use the term "the Tribe." As the Keweenaw Bay Indian Community terms itself "the Community," we also utilize such
 
 
 [2]
 Under the compact, "Indian lands" are defined as all lands held by the federal government in trust for the Community, all lands within the Community's reservation and all lands contiguous to the reservation on October 17, 1988. Compact § 2(B)(1), (2) and (3), J.A. 59. According to the IGRA, "Indian lands" means "all lands within the limits of any Indian Reservation; and any lands, title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual, subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power." 25 U.S.C. § 2703(4)(A)-(B)
 
 
 [3]
 Under 25 U.S.C. § 2710(d)(2)(B)-(C), the National Indian Gaming Commission's approval, and its publication in the Federal Register, of the Community's gaming ordinance was necessary to make Class III gaming activities authorized by the compact "fully subject to the terms and conditions of the Tribal-State compact." 25 U.S.C. § 2710(d)(2)(C)
 
 
 [4]
 At one time the Community operated a bingo (Class II) facility on the same land under the name "Big Bucks Bingo." See Keweenaw Bay I, 914 F.Supp. at 1499 & n. 6. Because that land was not land contiguous to or within the boundaries of the Community reservation, in separate litigation the issue of whether the land was taken into trust by the U.S. government on or before October 17, 1988 was litigated. See United States v. Keweenaw Bay Indian Community, 1993 WL 818943 (W.D.Mich. Sept. 27, 1993) (unpublished). That date is crucial because if land is taken into trust after that date, § 2719's general prohibition of Indian gaming absent fulfillment of certain statutory exceptions applies. The district court in that action concluded that the land had not been taken in trust by that date (October 17, 1988) and was in violation of 25 U.S.C. § 2719(a). It ordered a halt to the (Class II) bingo operations. See id. The Community subsequently docketed an appeal of that order with this court, but then voluntarily dismissed its appeal of that order. On February 4, 1997, United States v. Keweenaw Bay Indian Community, No. 94-1017, was dismissed pursuant to the Community's Fed. R.App. P. 42 motion
 
 
 [5]
 At its gaming facility, according to the district court's opinion from February 1996, the Community operates six blackjack tables, one craps table, and electronic and/or video games of chance including approximately 100 video poker games and slot machines. Keweenaw Bay I, 914 F.Supp. at 1499
 
 
 [6]
 The applicability of 25 U.S.C. § 2710 is not disputed by any party
 
 
 [7]
 25 U.S.C. § 2719(b)(1)(A) is as follows
 (1) Subsection (a) of this section [the general prohibition of gaming] will not apply when--
 (A) the Secretary, after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination;
 
 
 [8]
 The federal defendants-appellants appeal both the order granting summary judgment and the denial of their Fed.R.Civ.P. 59(e) motion to reconsider. The State of Michigan appeals the denial of its R. 59(e) motion. All the appeals contend error in the same legal conclusion which was the basis of the granting of summary judgment as well as the denial of the motions to reconsider, namely that § 2719 does not apply to the Class III gaming authorized by the compact