**MATCH–E–BE–NASH–SHE–WISH BAND OF POTTAWATOMI INDIANS, Plaintiff,**

v.

**John M. ENGLER, Governor of the State of Michigan, and The State of Michigan, Defendants.**

**No. 1:00CV457.**

United States District Court,
W.D. Michigan,
Southern Division.

May 1, 2001.

**726**

Peter A. Smit, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, Conly J. Schulte, Monteau, Peebles & Marks, Omaha, NE, for plaintiff.

Keith D. Roberts, Jennifer M. Granholm, Atty. Gen. Lansing, MI, Eric J. Eggan, Lansing, MI, for defendants.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

Plaintiff Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians (the Tribe) seeks to force the State of Michigan into negotiations for a casino pursuant to the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. 2710(d). Before the Court is the State's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. Because the Tribe does not meet the statu-

tory requirements for filing a suit under IGRA, Defendant's motion is granted and the suit is dismissed in its entirety.

Analysis of a 12(b)(6) motion is confined to the pleadings and attachments thereto. In evaluating a motion to dismiss under Rule 12(b)(6) the court accepts as true all factual allegations in the complaint, and construes ambiguous allegations in the plaintiff's favor. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court's function is not to weigh the evidence or evaluate the credibility of witnesses, but instead to "construe the complaint in the light most favorable to the plaintiff [and] accept all factual allegations as true." *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

For the movant to prevail on a 12(b)(6) motion it must show no possibility—legally or factually—of the other party prevailing as a matter of law. The Court finds that Defendants have met that burden.

Congress established thorough the IGRA a mechanism whereby a tribe "having jurisdiction over the Indian lands upon which" a casino is proposed may compel a recalcitrant state to negotiate concerning the casino. 25 U.S.C. § 2710(d)(3)(A). A federally recognized Indian tribe initiates the process by making a formal request to the state to begin negotiations. If an agreement is not reached within 180 days after the request is made or if the state fails to bargain in good faith the tribe may invoke federal court jurisdiction in a suit to compel the state to negotiate in good faith. The federal court is empowered to order the state to conclude a compact within 60 days. If after that time a compact has failed to be concluded the statute allows the Secretary of the Interior to authorize the operation of a casino apart from state authority.

If in the tribe's suit to compel negotiation the state asserts Eleventh Amendment immunity, the tribe may apparently go directly to the Secretary of the Interior. "If the state pleads an Eleventh Amendment defense, the suit is dismissed, and the tribe, pursuant to 25 U.S.C. 2710(d)(7)(B)(vii), then may notify the Secretary of the Interior .... The Secretary then may prescribe regulations governing class III gaming on the tribe's lands." *Seminole Tribe of Florida v. Florida,* 11 F.3d 1016, 1029 (11th Cir.1994), *aff'd,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

On September 2, 1999, the Tribe made a request to Governor Engler that he enter into negotiations with the Tribe to open a casino. The State declined to negotiate, and after 180 days the Tribe filed this suit asking that this Court order the State to conclude a gaming compact within 60 days.

The State responds that the statute requires a requesting tribe to have jurisdiction over Indian lands upon which a Class III gaming activity is proposed. In this case the Tribe does not have jurisdiction over any Indian lands. Therefore, the Tribe does not come under the authority of the statute and there is no claim upon which relief may be granted.

The pertinent part of 25 U.S.C. § 2710(d)(3)(A) reads as follows:

Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal–State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

In section 2710(d)(7)(A) the statute also confers jurisdiction upon the federal district courts provided the conditions of 25 U.S.C. § 2710(d)(3)(A) have been met:

(A) The United States district courts shall have jurisdiction over—

(i) any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal–State compact under paragraph (3) or to conduct such negotiations in good faith.

■ A full and fair reading of the statute indicates that a Tribe's possessing land over which it exercises jurisdiction is a necessary condition to invoke the authority of the statute. The description in section (3)(A) describes not merely an Indian tribe, but a tribe that is in possession of land. The sentence is best read conjunctively—the party must be an Indian tribe **and** it must have land over which it exercises jurisdiction **and** it must be operating or contemplating the operation of a gaming casino.

That section of the statute further directs which state shall be subject to the statute: It is that state "in which such lands are located." It seems clear that Congress included the requirement of land over which the Tribe exercises jurisdiction in order to inform the parties as to the particular state upon which the obligation to negotiate lies.

The Tribe, however, argues that the "only condition precedent" required by the statute is "a request by the Tribe to enter into negotiations." Plaintiff's *Answer* at 5–6, Docket # 30 (April 16, 2001). Plaintiff cites *Mashantucket Pequot Tribe v. Connecticut,* 737 F.Supp. 169 (D.Conn. 1990), *aff'd* 913 F.2d 1024 (2d Cir.1990), *cert denied,* 499 U.S. 975, 111 S.Ct. 1620, 113 L.Ed.2d 717 (1991), or the proposition that there is no requirement in IGRA that

a tribe have Indian lands as a prerequisite to the Court's jurisdiction under IGRA.

The question of land as a necessary condition to invoke the statute, however, was not before the court in *Mashantucket.* That court addressed whether a state ordinance, not the Tribe's jurisdiction over Indian land, was a prerequisite. How that court would have ruled if the issue of Indian land as a prerequisite is a matter of speculation, and therefore without precedential weight in the case before this Court.

According to the IGRA, "Indian lands" means

all lands within the limits of any Indian Reservation; and any lands, title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual, subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power."

25 U.S.C. § 2703(4)(A)-(B). *Keweenaw Bay Indian Community v. U.S .*, 136 F.3d 469, 471–472 (6th Cir.1998).

The Tribe has admitted that while it possesses land in fee simple, it does not have jurisdiction over that land consistent with the definition of the statute. The Tribe also argues that even if they do not have the requisite land, the Court does not have jurisdiction to consider that issue because of the State's Eleventh Amendment immunity. *See* Plaintiff's *Answer* at 4, Docket #30. The Tribe cites *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir.1989), for the proposition that a court may not consider the merits of a case before it addresses the Eleventh Amendment issue.

▉ It is true that this Court must consider the immunity issue before consideration of the merits of the case. The land requirement, however, is a condition prece-

dent placed on the Tribe before it may even invoke the IGRA. Whether the Tribe has land over which it has jurisdiction is not a merit of the case, but an issue that goes to standing to sue. Without that requirement, there is no case or controversy over which this Court may exert jurisdiction. If there is no case or controversy, then there is nothing against which the State may plead immunity.

The plain language of the statute clearly indicates that the intent of Congress was to force states to enter into compacts only with those tribes who possessed land within that state. Plaintiff has represented that the land owned by the Tribe in fee simple is in the process of going into trust to be held by the United States for the benefit of the Tribe. If and when that process is completed, the Tribe will be able to invoke the authority of the statute and bring the State to the bargaining table. Until that takes place, however, the Tribe does not come under the aegis of the statute, and the matter is not ripe for judgment.

The Court finds that when viewing the evidence in a light most favorable to the Plaintiff, there is no genuine issue as to any material fact and that Defendant is entitled to a judgment as a matter of law pursuant to Rule 12(b)(6).

Accordingly, an order consistent with this opinion will be entered.

### *ORDER*

In accordance with the opinion entered this date the Court hereby **ORDERS** that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6) (Docket #25) is **GRANTED,** and the action is dismissed in its entirety.